**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KIN, INC.,**

**Plaintiff,**

**v.**

**CRAWFORD HOYING REAL ESTATE SERVICES LLC, et al.,**

**Defendants.**

**Case No. 2:25-cv-546**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Shimeall**

**OPINION AND ORDER**

Kohl's, as most consumers know, is a department store with many locations across the United States. KIN, Inc., is a member of the Kohl's corporate family; it is also the tenant of record on Kohl's lease for a Columbus, Ohio, location. Defendants, who are Kohl's landlord (and related entities) on that lease, are building an apartment complex next door. While some of that complex's prospective residents might want a Kohl's nearby, the feeling is not mutual. Kohl's claims that this construction project violates various provisions of its lease agreement with defendants. The defendants moved for judgment on the pleadings. (*See* Doc. 27). For the reasons explained below, the Court **DENIES** that motion.

**BACKGROUND**

For over 30 years, Kohl's has rented property for a department store on Olentangy River Road in Columbus. (Doc. 1, #2–4). Defendant OP Columbus is Kohl's landlord, (*id.* at #4), and defendants OP Development and Crawford Hoying are OP Columbus's real estate development arms, (*id.* at #3). Things have apparently gone

well over the decades, with Kohl's renewing and amending the lease multiple times. (*See* Doc. 1-2, Doc. 1-3, Doc. 1-4). But relations took a downward turn in the fall of 2024.

Kohl's caught wind that Crawford was planning to build large apartment complex next to Kohl's store. (*See* Doc. 1-5, #161). Concerned that this might harm the store's commercial prospects, Kohl's lawyers sent a letter to Crawford on September 23, 2024, "remind[ing] [it] of its obligations" under the operative lease. (*Id.*). Specifically, Kohl's was concerned that (1) Crawford would build on real estate that the lease designates as parking space for the store, (2) the construction activities would interfere with Kohl's business operations, (3) Crawford might perform disruptive construction during the crucial holiday shopping season, specifically protected by the lease, and (4) Crawford might be trying to avoid giving notice to or obtaining consent from Kohl's. (*Id.* at #161–62). Crawford responded about a week later. (*See* Doc. 1-6). In that message, Crawford formally notified Kohl's of the planned construction and confirmed that it would, if minimally, infringe on the designated parking area Kohl's had discussed. (*Id.* at #165).

By November 1, 2024, Crawford's project had commenced. In a letter dated the same, Kohl's notified Crawford that it was withholding its consent to the project. (Doc. 1-8, #171). It also notified Crawford that the construction activities (which were then in the demolition phase to clear the site) were causing various disruptions. (*Id.*). In particular, the activities were disruptively noisy, had triggered fire alarms during shopping hours, had caused "an odor" in parts of the property, and had made some

portions of the parking area inaccessible. (*Id.* at #170). In response, Crawford paused activities for the holiday season and "implemented a no-build easement … to ensure the construction had no direct impact" on Kohl's building. (Doc. 1-9, #175). But, as of January 17, 2025, Crawford maintained that Kohl's was "unreasonably withholding consent" to the construction. (*Id.*). Accordingly, it decided that "construction on the Apartment Complex [would] recommence on Tuesday, January 21, 2025." (*Id.*). On Kohl's telling, at the time that Kohl's communicated its non-consent, "it needed additional information … to be able to give consent." (Doc. 1-10, #179). In any event, demolition apparently resumed.

Fast forward roughly a month. Kohl's sent another letter. There, it indicated its understanding, based on recent statements by a Crawford representative, that "the planned apartment project redevelopment is not moving forward because it is not financially viable at this time." (Doc. 1-11, #182). But Crawford corrected this misconception in both word and deed. It wrote back denying that it had abandoned the project. (*See* Doc. 1, #10). And, in addition to resuming demolition as stated above, it moved forward with preliminary work needed to begin construction on the new apartment building. (Doc. 35, #359).

As for Crawford's conduct during that demolition, Kohl's alleges that many of the problems plaguing the project prior to the holiday-season pause persisted after negotiations broke down in February. From the beginning of the project up to when Kohl's sued, Kohl's claims that (1) the construction triggered the store's alarm sensors, (2) contractors damaged the store office by "punching a 3 square-foot hole

through the wall," (3) Crawford disrupted the Kohl's parking area to prepare gas and water lines for the apartment, which caused the store to lose heat overnight at times and interfered with its water pressure, (4) that a gasoline-like odor lingers on one side of the Kohl's building, (5) that traffic to the Kohl's store was disrupted by Crawford's work in the parking lot, (6) that the construction caused Kohl's roof to leak, (7) that contractors' vehicles—and Crawford's other actions—had blocked Kohl's emergency exits and loading docks at times, (8) that construction has led to relaxed security measures on Crawford's part, (9) that construction has caused potholes near the entrance to the shopping center, and (10) that construction noise has driven customers away from the store. (Doc. 1, #10–12).

Moreover, and more to the point here, the demolition and construction activities, along with their side effects, Kohl's says, violate the lease agreement between it and defendants. To expand on that, the Court reproduces here the relevant provisions of the lease. First, on the issue of parking space, the lease states:

> Tenant has entered into this Master Lease in reliance on the parking space availability within the Mandatory Parking Areas designated on the Plot Plans for the Kohl's Stores; therefore, Tenant shall have the right to disapprove, at Tenant's sole discretion, the erection of any permanent or temporary structures, buildings, fences or barriers on any portion of the Common Areas within any Mandatory Parking Area.

(Doc. 1-1, #28). The lease also says that

> the Mandatory Parking Areas … will remain as shown on Exhibit D throughout the Term of this Lease and … no building, except existing buildings or buildings within Outlots or the Landlord's Permissible Building Area, fence, wall, sign or other obstruction will be erected or maintained upon any portion of the Mandatory Parking Areas without the prior written consent of Tenant, not to be unreasonably withheld or delayed.

(*Id.* at #26). And to govern instances where consent is required, the lease provides:

> Wherever in specific instances it is expressly stated in so many words in this Master Lease that one party or the other is required to give its consent, written or oral, to any action or non-action by the other party, such expression in those instances where used, shall be deemed to mean that such consent shall not be unreasonably or arbitrarily withheld, unless it is stated otherwise.

(*Id.* at #66–67). Beyond that, on the conduct of construction efforts, the lease dictates that "Landlord and Tenant shall take all necessary measures to minimize any disruption or inconvenience to the other tenants and operations caused by [construction] work, but in any case, no exterior work shall be commenced during the peak holiday season … without the prior written consent of the other party." (*Id.* at #48–49). The lease defines "peak holiday season" as "the period from November 1 through January 15." (*Id.* at #49).

Finally, the lease requires that Crawford "use reasonable efforts to maintain the Shopping Center[] as [a] unified shopping center[] providing reputable stores [and] offering a range of retail and other services." (Doc. 1-2, #113).

Based on what it perceives its rights to be under these provisions, Kohl's sued Crawford. Kohl's (or, more particularly, KIN, Inc.) is a Nevada corporation with its principal place of business in Wisconsin. (Doc. 1, #1, 2). Each of the three defendants is an LLC, and all three are citizens solely of Ohio. (Doc. 37, Doc. 38, Doc. 39; *see also* 10/2/2026 Not. Ord.). The defendants filed their Motion for Judgment on the Pleadings (Doc. 27) on May 7, 2026, and that matter is now fully briefed. (Doc. 30, Doc. 35). So the Court has jurisdiction under § 1332, and the matter is ripe for decision.

## LEGAL STANDARD

A motion for judgment on the pleadings is judged by the same standard as a motion to dismiss for failure to state a claim. So Kohl's, to defeat Crawford's motion, must have provided, in their complaint, "a short and plain statement of the claim showing that" they are entitled to their sought relief. Fed. R. Civ. P. 8(a)(2). That is to say, they must have alleged "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That in turn requires that the complaint contain "either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quotation omitted). And the allegations need to be *factual*, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.*

In considering Crawford's motion, the Court must "accept all well-pled factual allegations as true" and "construe the complaint in [the] light most favorable" to the plaintiff. *Id.* But if "there is no law to support the claims made," or "the facts alleged are insufficient to state a claim," the Court will grant the motion. *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

## LAW & ANALYSIS

Kohl's has three basic claims. First, it seeks a declaration that the lease required Crawford to obtain Kohl's consent before undertaking the construction project and that Kohl's had wide discretion to withhold that consent. (*See* Doc. 1, #12–

14). Second, it seeks a declaration that the lease, if it permitted redevelopment in these circumstances at all, required Crawford to dedicate the space to retail shopping. (*Id.* at #14–15). Third, it seeks damages for breach of contract. With respect to that count, Kohl's claims that various disruptions precipitated by the construction violated its right under the lease to quiet enjoyment of the premises. (*Id.* at #15–16). Crawford and its co-defendants attack each claim. But, for the reasons explained below, the Court finds none of Crawford's various grounds for dismissing these claims persuasive.

### A. The Court Will Take Jurisdiction of Kohl's Declaratory Judgment Claims.

Crawford argues that Kohl's declaratory judgment claims should be dismissed for two separate reasons. First, it argues that Kohl's sought declaration is improper because, according to Crawford, the sought declarations are the mirror-image of Kohl's breach of contract claim. (Doc. 35, #361). Second, it argues that Kohl's declaratory judgment claims are untimely because Kohl's did not sue until construction had already begun. (*Id.* at #358–60).

By way of background, the Declaratory Judgment Act empowers a district court to "declare the rights and other legal relations of any interested party," so long as the party presents "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). This is true "whether or not further relief is or could be sought." *Id.* Driving that point home, Civil Rule 57 provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed.

R. Civ. P. 57. So the Court's power to consider declaratory judgment claims is quite broad.

On the other hand, the statute only says that courts "*may* declare" a party's rights. 28 U.S.C. § 2201(a). This means that even if a district court has "jurisdiction of [a] suit under the Federal Declaratory Judgments Act," it may be "under no compulsion to exercise that jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). In fact, the Supreme Court has held that § 2201 "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of the litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). To channel this broad discretion, courts in the Sixth Circuit consider the five *Grand Trunk* factors. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Those are: (1) "whether the judgment would settle the controversy," (2) whether a declaration "would serve a useful purpose in clarifying the legal relations at issue," (3) whether the declaration is "being used merely for the purpose of 'procedural fencing' or to 'provide an arena for a race for res judicata,'" (4) whether a declaration would "increase the friction" between state and federal courts and "improperly encroach on state jurisdiction," and (5) "whether there is an alternative remedy that is better or more effective." *Bituminous Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004) (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

**1.** Start with Crawford's first argument—that the Court should dismiss Kohl's declaratory judgment claims because they duplicate Kohl's contract claim. For

this objection, the Court need not scrupulously examine the five factors listed above. That's because, on this front, there's something of a hard-and-fast rule: if "the Court's adjudication of [Kohl's] breach of contract claim necessarily will answer the questions on which it seeks declaratory relief," then the "declaratory judgment claim is duplicative" and thus should be dismissed. *Moser v. Menard, Inc.*, No. 1:20-cv-796, 2023 WL 5979263, at *3 (S.D. Ohio Sep. 13, 2023). In short, a declaratory judgment is improper if it "would be redundant with the relief already sought for breach of contract." *Jerome-Duncan, Inc. v. Auto-by-Tel, L.L.C.*, 176 F.3d 904, 908 (6th Cir. 1999).

But that doesn't seem to be the case here, or at least the Court cannot unequivocally say that it is at this stage of the case. The declaratory judgment counts, boiled down, seek declarations on two matters related to the contract: (1) that the lease required Kohl's consent to the development and construction efforts, and (2) that defendant's conduct violated the lease provision requiring them to use reasonable efforts to maintain the shopping center as a unified shopping center. (Doc. 1, #12–15). The contract claim, on the other hand, appears to focus on different provisions of the lease. In that count, Kohl's alleges that defendants' construction work inconvenienced it and disrupted its operations, causing the damages outlined above. (*Id.* at #10–12, 15–16).

So, while there might be some overlap in evidence, deciding the contract claim will not decide the declaratory judgment claims, at least as the Court currently understands them. For a start, proving Kohl's contract claim requires interpreting

different terms of the lease than the declaratory relief claims. And, in terms of the relevant facts, while Crawford's conduct in managing the particulars of the demolition are the be-all and end-all of the contract claim, that conduct seems largely irrelevant to the declaratory relief claim. Remember, the hard-and-fast rule is against declarations that *mirror* already-sought coercive relief, not against all declarations that happen to seek relief arising out of the same contract. *Moser*, 2023 WL 5979263, at *3. The Court thus rejects Crawford's first ground for dismissing Kohl's declaratory relief claims.

**2.** Crawford may have better luck with its argument that Kohl's declaratory relief claims are "untimely." (Doc. 35, #358). It is at least a closer question. On this front, there is no per se rule, so the Court must turn to the five factors outlined earlier. Before doing that, however, the Court begins by reviewing the timeline.

From what the Court can tell, Kohl's began this litigation around the time Crawford finished demolishing the old building and turned toward constructing the new one. The Court reaches that conclusion because the complaint contains allegations only about the effect of the demolition project and the parties' communications between September 2024 and February 2025. (*See generally* Doc. 1). And, in Kohl's February 2025 letter to Crawford, Kohl's suggests that Crawford (apparently behind the scenes) had told Kohl's the demolition would be finished "in approximately the next five weeks." (Doc. 1-11, #182). The complaint was filed some eleven weeks later, on May 16, 2025. (Doc. 1). It stands to reason, then, that

demolition was finished and Crawford, if it had not already started, was about to begin construction of the apartment building.

Assuming that that demolition was done and construction was either beginning or had begun, Kohl's could have a problem here. As Crawford points out, a "[d]eclaratory judgment is typically sought before an injury-in-fact has occurred." (Doc. 27, #302 (quoting *Gregor v. Rice Drilling D, LLC*, No. 2:21-cv-3999, 2024 WL 169119, at *3 (S.D. Ohio Jan. 16, 2024))). That is because a declaration is generally a less desirable remedy than an injunction or money-damages and those more robust remedies will typically be available if the activities are under way and the plaintiff's claim has merit. That said, the mere fact that other remedies are available (if in fact they were) does not necessarily foreclose declaratory relief. As outlined above, § 2201 permits courts to award such relief "whether or not further relief is or could be sought."

To further explore defendants' argument, let's start with something we can easily answer: whether Kohl's has standing to seek declaratory relief. Declarations are a form of prospective relief, so, as for standing to seek injunctive relief, a plaintiff who wants a declaratory judgment must "demonstrate actual present harm or a significant possibility of future harm." *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) (quoting *Peoples Rts. Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998)). That is, Kohl's claims must target some ongoing harm or one that defendants will almost certainly inflict on Kohl's in the relatively near future. *See Golden v. Zwickler*, 394 U.S. 103, 109–10 (1969).

Taking Kohl's interpretation of the lease and well-pleaded factual allegations as true, defendants are currently engaged in conduct—constructing an apartment building in areas the lease reserves alternatively for Kohl's parking or additional retail shopping—that presently harms Kohl's and will continue to do so in the future. Reduced parking harms this Kohl's location's commercial prospects; and placing an apartment complex in an area where the lease calls for shopping decreases consumer foot-traffic. Even though these harms have already been inflicted, they are ongoing, so they easily qualify for standing purposes. True, that does not assure the propriety of declaratory relief here. But the facts underlying standing help to show why the Court concludes it should allow Kohl's declaratory judgment claims to proceed.

Take the five *Grand Trunk* factors in order. The first, "whether the [declaratory judgment] would settle the controversy," *Grand Trunk*, 746 F.2d at 326, offers little support to Crawford's position. It is only true that Kohl's sought declaration would not settle the controversy in that no declaration can truly settle a controversy. If Kohl's prevailed, it would have an issue-preclusive judgment that the lease forbade Crawford building an apartment building, at least at the site Crawford chose. (*See* Doc. 1, #12–15). With that in hand, the only thing left for Kohl's to do would be to seek "[f]urther necessary or proper relief" based on the judgment. 28 U.S.C. § 2202. And this would avoid multiple claims targeting Crawford's allegedly lease-violative conduct at different points in time. So, to the second factor, declaratory relief would significantly "clarify[] the legal relations in issue," just as the DJA contemplates. *Grand Trunk*, 746 F.2d at 326; *see also* 28 U.S.C. § 2202.

The third and fourth factors, involving procedural gamesmanship and conflict with ongoing or potential proceedings in state court, are irrelevant here. This is not the sort of anticipatory action that might cause the Court to suspect that "procedural fencing" or a "race for res judicata" is afoot. *Id.* And there are no parallel state court proceedings to which the Court could defer. *Cf. Brillhart*, 316 U.S. at 494–95.

That leaves the fifth factor—availability of alternative remedies. It is the only factor that favors abstention here, but it does so weakly. Defendant's main reason for why the Court should dismiss the declaratory judgment claims seems to be that Kohl's could seek damages for the injuries that have already happened. Nothing leaps off the page that might rebut that point, true, but it's only half the issue. Kohl's damages for its future harms, if available at all, likely will be challenging to calculate; and, given the restrictions on equitable remedies in contract actions, they may not be able to get injunctive relief either.

With that understanding of the outcomes on the various factors, the question becomes one of balancing. While the Sixth Circuit has never gone into specifics about the relative weight of each factor, it has said, for what it's worth, that the balancing exercise prioritizes "efficiency, fairness, and federalism" and "will depend on the facts of the case." *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 29 F.4th 792, 801 (6th Cir. 2022) (quoting *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). That court has, however, upheld decisions to take jurisdiction where the "first two *Grand Trunk* factors supported jurisdiction, [the] third and fourth factors were neutral, and [the] fifth factor weighed against [the] exercise of jurisdiction."

*Boyd v. Martinez*, No. 22-6026, 2023 WL 4903173, at *8 (6th Cir. 2023) (citing *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 402 (6th Cir. 2019)). So the Court follows that lead. With that on the table, and considering that the fifth factor just barely favors dismissal, the Court concludes that it should take jurisdiction of Kohl's declaratory judgment claims.

**B. Kohl's Breach of Contract Claim Survives Crawford's Motion.**

Crawford's asserted ground for dismissing Kohl's breach of contract claim also falls short. Kohl's damages claim is for the disruptive impact of Crawford's construction activity. The complaint frames the claim as one for violation of express lease terms regulating construction. (*See* Doc. 1, #15–16; Doc. 1-1, #49). Crawford seeks dismissal of this claim because, as it reads Ohio law, "a tenant cannot state a claim for breach of quiet enjoyment unless the alleged interference is so severe that it amounts to a constructive eviction," something all agree did not happen here. (Doc. 27, #305).

The Court makes short work of Crawford's argument because (1) the pleading requirements for a breach of the implied covenant of quiet enjoyment are irrelevant to this claim for breaches of express lease provisions, and (2) even if Kohl's claim related to that covenant, Ohio courts only require a showing of constructive eviction if the plaintiff seeks equitable relief, not damages.

To explain that a little further, Kohl's seeks damages for Crawford's actions that it alleges violated §§ 6(b) and 24(b) of the lease. (Doc. 1, #15). The first of those requires that "[i]n doing any construction at [the] Shopping Center," either of the

parties will "minimize interference with the other's business operations." (Doc. 1-1, #30). The latter, reproduced above, in addition to imposing a comparable obligation, also provides that "[t]he party doing the construction … shall repair at its own cost and expense any and all damages caused by such work and shall restore the affected portion of the Shopping Center" to equal or better condition than before the construction. (*Id.* at #49). Ohio courts treat breaches of commercial leases like this one the same as breaches of other contracts. *See Frenchtown Square P'ship v. Lemstone, Inc.*, 791 N.E. 2d 417, 419–21 (Ohio 2003). And the lease here—the contract—does not require constructive eviction to unlock damages claims for breaches of specific terms. So, on this front, Crawford's argument is hard to fathom.

The law of property likewise does Crawford no favors. Take this: "[w]here a breach of the covenant of quiet enjoyment does not rise to the level of a constructive eviction, the only available remedy is damages." *JAL Dev. v. LivFitNutrition, L.L.C.*, 2014-Ohio-3830 ¶ 14 (1st Dist.) (quoting *Cincinnati Ins. Co. v. Evans*, 2010-Ohio-2622 ¶¶ 53–54 (6th Dist.)). Kohl's claim is for damages. (Doc. 1, #15–16). So it would survive Crawford's motion even if it were based on the covenant of quiet enjoyment.

* * *

Crawford's arguments for dismissing Kohl's declaratory judgment claims fail because those claims do not duplicate Kohl's contract claims and because the *Grand Trunk* factors suggest that the Court should exercise jurisdiction under the Declaratory Judgment Act. And Crawford's argument for dismissing Kohl's breach of contract claim is meritless.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the defendants' Motion for Judgment on the Pleadings (Doc. 27).

**SO ORDERED.**

October 20, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**